# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE ALBERTO IBARRA-LOPEZ,<br><br>　　　　Petitioners,<br><br>　　v.<br><br>TOOD LYONS, et al.,<br><br>　　　　Respondents. | Case No. 1:26-cv-01799-JLT-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS, DIRECT RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER, AND DENY RESPONDENTS' MOTION TO LIFT NO-TRANSFER ORDER AS MOOT<br><br>(ECF Nos. 1, 8) |

Petitioner, represented by counsel, is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends that the petition for writ of habeas corpus be granted on Count Seven, Respondents be directed to immediately release Petitioner, and Respondents' motion to lift no-transfer order be denied as moot.

**I.**

**BACKGROUND**

Petitioner is a citizen of Mexico who entered the United States in or about 2001 and has resided continuously in the United States since that time. Petitioner was placed in removal proceedings in or about April 2012. Petitioner applied for cancellation of removal pursuant to 8 U.S.C. § 1229b(b). On September 11, 2014, an immigration judge ("IJ") denied Petitioner's application for cancellation of removal and ordered him removed from the United States. (ECF

No. 1 at 5.[1]) On March 11, 2016, the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal. Petitioner then filed a petition for review with the Ninth Circuit Court of Appeals that was subsequently dismissed. (ECF No. 1 at 6.)

In January 2017, Petitioner filed a motion to reopen his removal proceedings with the BIA in order to apply for asylum based on changed country conditions. Petitioner also sought reopening based on the diagnosis of autism of his United States citizen son. On January 29, 2026, the BIA denied Petitioner's motion to reopen. Petitioner timely filed a petition for review with the Ninth Circuit Court of Appeals, where the matter is currently pending. (ECF No. 1 at 6.) On February 3, 2026, the Ninth Circuit issued a temporary stay of removal pending further order. (ECF No. 6-1 at 1.)

In 2023, Petitioner was released on an order of supervision. The petition alleges that Petitioner has complied with all conditions of the order, including periodic check-ins with Immigration and Customs Enforcement ("ICE"). (ECF No. 1 at 6.) At a regularly scheduled check-in with ICE on September 10, 2025, Respondents revoked Petitioner's order of supervision and arrested him. Petitioner has been detained at the Mesa Verde ICE Processing Center since then. (Id. at 2.)

On March 5, 2026, Petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order ("TRO"). (ECF Nos. 1, 2.) That same day, the assigned district judge denied the motion for TRO as untimely, referred the matter to the undersigned for a determination on the merits, and prohibited Respondents from removing Petitioner from the United States or transferring him out of this district pending further order of the Court. (ECF No. 5.)

On April 6, 2026, Respondents filed a response, and Petitioner filed a reply on April 21, 2026. (ECF Nos. 6, 7.) On May 28, 2026, the Ninth Circuit denied Petitioner's motion for stay of removal. (ECF No. 8-2.) On May 29, 2026, Respondents filed a motion to lift this Court's order prohibiting removal or transfer. (ECF No. 8.) On June 8, 2026, Petitioner filed an opposition. (ECF No. 9.)

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

## II.

## DISCUSSION

### A. Zadvydas

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,'[2] a noncitizen 'may be detained' or may be released under terms of supervision." Arteaga-Martinez, 596 U.S. at 575. "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Id. at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the

---

[2] "The removal period begins on the latest of the following":
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). "During the removal period, detention is mandatory." Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(2)). The "removal period in § 1231(a)(1) will commence even if a stay of removal is entered while a federal court . . . considers a petition for review of a denial by the Board of Immigration Appeals of an alien's motion to reopen[.]" Aleman Gonzalez v. Barr, 955 F.3d 762, 767 (9th Cir. 2020) (citing Diouf v. Mukasey, 542 F.3d 1222, 1230 (9th Cir. 2008)), rev'd on other grounds and remanded sub nom. Garland v. Aleman Gonzalez, 596 U.S. 543, (2022).

government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689.

> After [a presumptively reasonable] 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Zadvydas, 533 U.S. at 701.

Respondents contend that "Petitioner's detention is lawful" under 8 U.S.C. § 1231(a)(6) and that "[a]lthough the presumptively reasonable six-month detention period has lapsed, Petitioner is only entitled to habeas relief if he can demonstrate the absence of a significant likelihood of removal in the foreseeable future" and "he has not done so." (ECF No. 6 at 4.)

> However, the burden-shifting framework from *Zadvydas* does not apply here. As another district court noted in a similar context, "[t]his case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*." *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025). As in *Nguyen*, "[t]his case is about ICE's authority to *re-detain* [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." *Id.* "[T]his is not your typical first round detainment of an alien awaiting removal. Petitioner was previously detained, then released on supervised release for several years, and his 90-day removal period expired." *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).

Yan-Ling X. v. Lyons, 813 F. Supp. 3d 1157, 1163 (E.D. Cal. 2025).

4

**B. Revocation of Order of Supervision**

In Claim Seven of the petition, Petitioner asserts that "Respondents violated agency regulations governing who and upon what findings it may properly revoke an order of supervision when it revoked Petitioner's order." (ECF No. 1 at 20.) "Specific regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed." Yan-Ling X., 813 F. Supp. 3d at 1162. 8 C.F.R. § 241.13(i) provides in pertinent part:

> (1) Violation of conditions of release. Any alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody and is subject to the penalties described in section 243(b) of the Act. In suitable cases, the HQPDU shall refer the case to the appropriate U.S. Attorney for criminal prosecution. The alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released.
>
> (2) Revocation for removal. The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.
>
> (3) Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(1)–(3).

8 C.F.R. § 241.4(b)(4) provides:

> Service determination under 8 CFR 241.13. The custody review procedures in this section do not apply after the Service has made a determination, pursuant to the procedures provided in 8 CFR 241.13, that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably

> foreseeable future. However, if the Service subsequently determines, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future to the country to which the alien was ordered removed or to a third country, the alien shall again be subject to the custody review procedures under this section.

8 C.F.R. § 241.4(b)(4). With regard to revocation, 8 C.F.R. § 241.4(*l*) provides in pertinent part:

> (1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

> (2) Determination by the Service. The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:

> (i) The purposes of release have been served;

> (ii) The alien violates any condition of release;

> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(*l*)(1)–(2).

    1.   Authority to Revoke Release

Petitioner asserts that his "order of supervision was not revoked by the ICE Field Office Director. The officer who revoked the order did not first make findings that revocation was in the public interest and that circumstances did not reasonably permit referral to the [Executive Associate Director]." (ECF No. 1 at 16.) Petitioner argues that "the record contains no evidence that the Assistant Field Office Director considered any circumstances that would preclude

referral of the case to the Executive Associate Director," in violation of 8 C.F.R. § 241.4(l)(2). (ECF No. 7 at 4.) Respondents have failed to address Petitioner's arguments in their response.

"[S]everal federal courts addressing similar circumstances have held that a failure to adhere to the requirement that an Executive Associate Director[3] or a Field Office Director[4] make the determination to revoke release in compliance with 8 C.F.R. § 241.4 violates due process and thus mandates release." Santamaria Orellana v. Baker, No. CV 25-1788-TDC, 2025 WL 2841886, at *4 (D. Md. Oct. 7, 2025) (footnotes added). Here, Assistant Field Office Director Alexander Pham signed the notice of revocation of release. (ECF No. 6-2 at 1.) "[B]efore a district director can revoke release, the district director must make certain findings. And even if the term 'district director' might include . . . an 'assistant field office director,' which is far from clear, the government has not alleged that [Pham] made the requisite findings—explicitly or otherwise—before revoking [Petitioner]'s release." Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 162 (W.D.N.Y. 2025). Accordingly, the undersigned recommends finding that Petitioner is entitled to habeas relief on the ground that the Assistant Field Office Director did not have authority to revoke Petitioner's release and did not make the requisite findings before doing so.

2. Change of Circumstances

Petitioner argues that Respondents failed to demonstrate that there is a "significant likelihood that [Petitioner] may be removed in the reasonably foreseeable future," as required by 8 C.F.R. § 241.13(i)(2). (ECF No. 7 at 4.) "[W]hen ICE revokes release to effectuate removal, 'it is [ICE's] burden to show a significant likelihood that the alien may be removed.'" Yan-Ling X., 813 F. Supp. 3d at 1163 (second alteration in original) (quoting Escalante, 2025 WL 2206113, at *3) (citing Roble v. Bondi, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable

---

[3] "The 'Executive Associate Director' is today's equivalent of the 'Executive Associate Commissioner' named in the regulation." Zhang v. Genalo, 814 F. Supp. 3d 307, 321 (E.D.N.Y. 2025).

[4] "[U]nder 241.4(l)(2), the officials with the power to revoke release after making certain findings include field office directors and any other official 'delegated the function or authority ... for a particular geographic district, region, or area.'" Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 161 (W.D.N.Y. 2025) (citing 8 C.F.R. §§ 1.2, 241.4(l)(2)).

future."); Abuelhawa v. Noem, No. 4:25-CV-04128, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future."); Nguyen, 788 F. Supp. 3d at 150).

The only evidence provided by Respondents that touches upon this issue is the notice of revocation of release, which states in pertinent part:

> ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you. On September 11, 2014, you were ordered removed to Mexico by an authorized U.S. DHS/DOJ official and on March 11, 2016, the Board of Immigration Appeals dismissed your case.

(ECF No. 6-2 at 1.) However, the 2014 removal order and the BIA's 2016 dismissal predate Petitioner's 2023 release on supervision and thus, cannot constitute changed circumstances in 2025 when Petitioner's release was revoked. In the motion to lift the no-transfer order, Respondents inform the Court that the Ninth Circuit has denied Petitioner's motion for stay of removal and that "[a]part from the Court's order prohibiting removal or transfer, there is no other impediment from executing Petitioner's final order of removal." (ECF No. 8 at 2.) However, Respondents provide no evidence regarding what steps they have taken and will take to remove Petitioner from the United States. "Respondents fail to explain why [Mexico] did not issue a travel document in the past or why [Mexico] is likely to issue a travel document for petitioner in the reasonably foreseeable future." Yan-Ling X., 813 F. Supp. 3d at 1164. See Vu v. Noem, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *6 (E.D. Cal. Nov. 6, 2025) (finding "general assertion that ICE is 'mak[ing] efforts' to obtain travel documents for petitioner . . . not compelling" because "Respondents do not identify any specific efforts they have made to obtain a travel document from Vietnam for petitioner, much less whether they have any indication from Vietnam that it is likely to issue such a travel document"). Accordingly, Respondents have failed to satisfy their burden that changed circumstances have made Petitioner's removal significantly likely in the reasonably foreseeable future as required by 8 C.F.R. § 241.13(i), and thus, the undersigned recommends finding that Petitioner is entitled to habeas relief on this ground.

\\\

**C. Appropriate Relief**

"[W]here an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute and ICE fails to adhere to it, the challenged action is invalid." Huang v. Albarran, 818 F. Supp. 3d 1154, 1165 (E.D. Cal. 2026) (quoting Yan-Ling X., 813 F. Supp. 3d at 1166–67). For the reasons set forth in section II(B), *supra*, the undersigned recommends finding that Petitioner's re-detention was unlawful and his immediate release from custody is warranted.[5] See Ceesay, 781 F. Supp. 3d at 162 ("this Court cannot conclude that [Assistant Field Office Director] Robinson had the authority to revoke release, finds that Ceesay's release was not lawfully revoked, and holds that he is entitled to release on that basis alone"); Nguyen, 788 F. Supp. at 152–53 ("ICE's individualized determination to re-detain Mr. Nguyen is not in compliance with 8 C.F.R. § 241.13(f), (i)(2)" and "[b]ased on ICE's violations of its own regulations, I conclude that Mr. Nguyen's detention is unlawful and that his release is appropriate."); Liu, 2025 WL 1696526, at *3 ("Accordingly, the Court concludes that because officials did not properly revoke petitioner's release pursuant to the applicable regulations, that revocation has no effect, and petitioner is entitled to his release (subject to the same Order of Supervision that governed his most recent release)."); Yan-Ling X., 813 F. Supp. 3d at 1167 ("Petitioner has shown that she is likely to succeed on her claim that ICE did not have sufficient grounds to re-detain her under the regulations, and that her re-detention was therefore unlawful. Her immediate release is required to return her to the status quo ante.")

"[M]any courts in this district have found that when a non-citizen subject to a final order of removal is released on OSUP and is re-detained years later, the non-citizen is entitled to a pre-deprivation hearing prior to detention due to an accrued liberty interest." Huang, 818 F. Supp. 3d at 1166 (citing J.L.R.P. v. Wofford, No. 1:25-cv-01464-KES-SKO (HC), 2025 WL 3190589, at *8–10 (E.D. Cal. Nov. 14, 2025); Alva v. Kaiser, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3–5 (N.D. Cal. Aug. 21, 2025)). Applying the Mathews v. Eldridge, 424 U.S. 319 (1976), factors, the J.L.R.P. court "found that the petitioner was entitled to a bond hearing prior to re-detention because":

---

[5] In light of this conclusion, the Court declines to address Petitioner's other claims for relief.

(1) petitioner had a significant private interest in remaining free from detention after being out of custody for nearly four years and built normal attachments to life (2) the risk of erroneous deprivation is high because 8 C.F.R. §§ 241.13 and 241.4 do not provide for review of ICE's reasons for revocation by a neutral arbitrator and (3) the government's interest in detaining petitioner without a hearing is low because in immigration court, custody hearings are routine with minimal costs.

Huang, 818 F. Supp. 3d at 1166 (citing J.L.R.P., 2025 WL 3190589, at *9–10). "Similarly, in *Alva*, the court found a due process violation where the government detained a non-citizen with a final order of removal, released on OSUP for over six years, without a pre-deprivation hearing." Huang, 818 F. Supp. 3d at 1166 (citing Alva, 2025 WL 2419262, at *3–5). Likewise, in Huang, the court found a due process violation where the government detained the petitioner with a final order of removal, released on OSUP for nearly seven and a half years, without a pre-deprivation hearing. Huang, 818 F. Supp. 3d at 1166–67.

Based on the foregoing, the undersigned recommends finding that "in the event of his re-detention, Petitioner has a right to a pre-deprivation hearing where the government bears the burden of showing that Petitioner's release poses a flight risk or danger to the community." Huang, 818 F. Supp. 3d at 1166–67 (citing J.L.R.P., 2025 WL 3190589, at *9–10; Alva, 2025 WL 2419262, at *3–5).

**D.  Motion to Lift No-Transfer Order**

Respondents have moved the Court to lift its no-transfer order. (ECF No. 8.) As the Court has addressed the merits of the petition, the undersigned recommends denying Respondents' motion as moot given that the Court's prohibition against removal and transfer will no longer be in effect once the case is closed.

**III.**

**RECOMMENDATION**

Accordingly, the undersigned HEREBY RECOMMENDS that:

1.  The petition for writ of habeas corpus (ECF No. 1) be GRANTED on Count Seven.

2.  Respondents' motion to lift no-transfer order (ECF No. 8) be DENIED as moot.

3.  Respondents be directed to immediately release Petitioner from custody under the

conditions of his most recent order of supervision.

4. Respondents be enjoined and restrained from re-detaining Petitioner unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or Respondents demonstrate by clear and convincing at a pre-deprivation bond hearing before a neutral decisionmaker that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.[6]

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 11, 2026**                              /s/ Erin P. Groj
                                                        UNITED STATES MAGISTRATE JUDGE

---

[6] "If the Respondents make the required regulatory efforts and showing of significant likelihood of removal within the reasonably foreseeable future while giving [Petitioner] the necessary due process, nothing in this [recommendation] will prevent them from re-detaining him or removing him." Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).